IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Jeffrey L. Hanes | CIVIL ACTION NO. 1:00-CV-2003 |
| Plaintiff | |
| v. | |
| Apple Chevrolet, Inc. et al. | |
| Defendant | Judge Sylvia H. Rambo |

FILED HARRISBURG, PA
JUN 1 7 2002
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

### PLAINTFF'S STATEMENT OF MATERIAL FACTS

TO THE JUDGES OF SAID COURT:

AND NOW, on this 14th day of June 2002, comes Plaintiff, Jeffrey L. Hanes, by and through his counsel, Sandra Thompson, Esquire, to file this Statement of Material Facts[1], and to state as follows:

1. Jesse Pohlig (hereinafter Pohlig), Caucasian male, asked Plaintiff, African American male, to rent a van to transport individuals to a seminar that was held in the Philadelphia area and conducted by Metro Public Adjustment.[2]

2. Because Plaintiff did not have a credit card at the time to reserve the van, Pohlig used his credit card to reserve the van.[3] Plaintiff was to reimburse Pohlig for half of the rental fees incurred.[4]

3. On November 13, 1998 at noon, Plaintiff picked up the rental van while Kathy Sargen (hereinafter Sargen) was behind the counter.[5]

---

[1] Supporting evidence for each material fact is attached hereto and incorporated herein and is marked as exhibits.
[2] See, 5-24-2002 deposition of Jeffrey L. Hanes, Plaintiff (hereinafter referred to as Exhibit 1), p24-25; (Note: Plaintiff's copy of his deposition is in Min-U-Script. The page numbers may not correspond to the page numbers on Defendants' exhibits.)

4. Sargen requested that Plaintiff return the van by 4:00pm on November 14, 1998, but no later than 5:00pm, because another customer reserved the van for 5:00pm.[6]

5. There were no times written on the rental agreement at the time of signing by Plaintiff. Stating further, on or after November 14, 1998, Defendants whited out and changed the terms of the original contract. The changed terms are as follows: a pick-up time of 5:00pm, when Plaintiff picked up the van at 12:00pm; number of days and charged amount; day rate plus mileage; total sales tax; and the total charges. Further disputed that Plaintiff was given the opportunity to ask questions.[7]

6. In an effort to return the van to Apple Chevrolet, Inc (hereinafter Apple) on time, Plaintiff and his party left the seminar early, between 2:00pm and 3:00pm.[8]

7. Having been told to try to have the van back at least b 5:00pm, Plaintiff explained to the other passengers that he had to leave the seminar early.[9]

8. Beginning at 3:20pm, Plaintiff called Apple to advise of his status in traffic, but he kept receiving voicemail. Apple's cashier, JoAnn Hall (hereinafter referred to as Hall), did not call Plaintiff until after Shriver's arrival, which was approximately 4:30pm.[10]

9. Plaintiff had several conversations with Hall on his travel back to Apple, which included the following:

---

[3] Exhibit 1, p 26.
[4] Exhibit 1, p 69.
[5] Exhibit 1, p 36-37; Written statement prepared by Sargen for Apple in response to Plaintiff's complaint filed with the York City Human Relations Commission (hereinafter referred to as Exhibit 2).
[6] In addition to paragraph no. 8 of the complaint, see Plaintiff's Answer to Defendants Interrogatory No. 10 (hereinafter Exhibit 3). See Also, Plaintiff's Answer to Request for Admission no. 4 (hereinafter Exhibit 4); and John Shriver's 5-3-2002 notarized statement (hereinafter Exhibit 5).
[7] Rental agreement (hereinafter referred to as Exhibit 6); 5-10-2002 deposition of Defense witness, Joann Hall, (hereinafter referred to as Exhibit 7), p 33- 35; Exhibit 3; Exhibit 1, p 36.
[8] Exhibit 1, p 46.
[9] Exhibit 1, p 46.

2

    a.    Hall told Plaintiff that he would be charged for an extra day's rental.[11]

    b.    Plaintiff responded that he would then retain the van for another day.[12]

    c.    Hall then told Plaintiff that "if he would just return the van today (November 14, 1998)", he would only be charged for one day, without mention of a time.[13]

10. Plaintiff returned the van on November 4, 1998.[14]

11. Plaintiff arrived at Apple shortly after 5:13pm.[15]

12. Prior to Plaintiff's return and prior to her initial call to Plaintiff, Hall was advised by Sargen to charge Plaintiff for two days. However, to effect the van's return on November 14, 1998 for use by Shriver, Hall agreed to a one day charge.[16]

13. Upon Plaintiff's arrival, Hall reneged on the agreement and Plaintiff attempted to secure performance, as Plaintiff's party listened.[17]

14. All voices were loud.[18]

15. The conversation between Hall and Plaintiff were heard and understood by all present.[19] The only sentence that Hall did not finish was when she told Plaintiff that "she waited on his black…".[20]

16. As soon as Plaintiff arrived at Apple, Hall took the van keys and gave them to Shriver.[21]

---

[10] Exhibit 1, 48-49; Hanes cellphone log for telephone number 717-848-1300 (Apple Chevrolet)(hereinafter referred to as Exhibit 8; Exhibit 5; Exhibit 7, p 35.
[11] Exhibit 7, p 37.
[12] Exhibit 7, p 37
[13] Exhibit 7, p 37
[14] See paragraph 4, footnote number 5.
[15] Exhibit 1, p 50.
[16] See paragraph 9(c), footnote 11.
[17] Exhibit 1, p 59-60, 62-63; Exhibit 7, p30-31, 45, 65-66; 5-10-2002 deposition of Defense witness, Matt Kugle (hereinafter referred to as Exhibit 9), p 38; See Also written statements of Dimitrios Tomboris, Mark Green, Lionel Weathers, and Steve Jones (marked as Exhibits 10-13, respectively).
[18] Exhibit 1, p 62, 66; Exhibit 7, p 45, 47-48.
[19] Exhibit 9, p 42; Exhibit 1, p 62.
[20] Exhibit 1, p 63.

17. Because Plaintiff continued attempt secure enforcement of the contract, Hall called Kugle for assistance.[22]

18. Kugle claimed to recognize Plaintiff from Ninth grade in high school, approximately seventeen years before November 14, 1998, although he no personal interaction with Plaintiff in high school or since.[23]

19. Kugle loudly told Plaintiff that the two day charge would remain and if Plaintiff did not agree he can get a lawyer. Kugle then stated that was calling the police on Plaintiff, because Plaintiff sought performance under the contract. [24]

20. Kugle, along with Hall, stated to Plaintiff that they would just bill the two days to his credit card,[25] instead of honoring the renegotiated contract and only charging one day's fee, as agreed.[26]

21. Kugle called the police upon Plaintiff, although Plaintiff was not threatening to him or Hall[27], under the pretext of mediating the contract dispute even when he has never before engaged the police to mediate a contract/billing dispute[28].

22. Plaintiff waited twenty (20) minutes for police arrival, off of Defendants' premises,[29] while Hall refusing to wait quickly left, yelling obscenities at Plaintiff and his party.[30]

23. Plaintiff received a criminal citation in the mail that was wholly based upon Defendants' accusations[31].

---

[21] Exhibit 7, p 53.
[22] Exhibit 1, p 65; Exhibit 9, p 46.
[23] Exhibit 9, p 12-14; Exhibit 1, p 52, 53
[24] Exhibit 7, p 45, 47-48; Exhibit 1, p 64, 66.
[25] Exhibit 1, p 65; Exhibit 7, p 46.
[26] Exhibit 9, p 63.
[27] Exhibit 9, p 35-36
[28] Exhibit 9, p 30-33, 36-37, 58.
[29] Exhibit 1, p 73

24. Defendants never wavered in their pursuit to penalize Plaintiff for seeking enforcement under the contract.[32]

25. Hall testified as Defendants' agent and claimed that Plaintiff was threatening and engaged in obscene language/gestures.[33]

26. At the district justice hearing, Plaintiff attempted to advise the court of the occurrences on November 14, 1998.[34]

27. Plaintiff was found guilty of disorderly conduct and assessed fines.[35]

28. Although only Plaintiff's signature was on the contract[36] delineating him as the customer,[37] Apple refused to perform for Plaintiff, but did perform for Pohlig[38].

29. Due to Defendants' discriminatory treatment of Plaintiff, Pohlig forgave Plaintiff's debt.[39]

30. After the events of November 14, 1998 and the district justice hearing, Plaintiff began experiencing stress headaches. He sought medical treatment when they became unbearable.[40]

31. On November 14, 2000, Plaintiff filed this present suit. (judicial notice requested)

32. Plaintiff, as an African American, is a member of a protected class.[41]

---

[30] Exhibit 1, p 70; Exhibit 9, p 59; Exhibit 7, p 49-50.
[31] Written statement of York City Police Officer Nicholas Hansel that is dated 5-9-2002 (hereinafter referred to as Exhibit 14).
[32] Exhibit 7, p 11, 51, 54-55; Exhibit 9, p 59.
[33] Copies: non-traffic citation and sentencing order (hereinafter referred to as Exhibit 15); Exhibit 7, p 11.
[34] Exhibit 1, p 77
[35] Exhibit 1, p 77.
[36] Exhibit 7, p 23; 5-10-2002 Deposition of Kathy Sargen (hereinafter referred to as Exhibit 16), p 16, 18, 29.
[37] Exhibit 16, p 17
[38] Exhibit 16, p 18.
[39] Exhibit 1, p 68-69; Exhibit 16, p 34.
[40] Exhibit 1, p 78.
[41] Exhibit 1, p 8.

33. Plaintiff unsuccessfully attempted to secure Defendants' performance under a rental agreement for a one-day fee for the rental of a van on November 13, 1998 and its return on November 14, 1998.[42]

34. There have been other customers who Defendants regarded as loud, angry customers in the rental department[43] and in the service department.[44]

35. Although, Defendants claim that Plaintiff's tone of voice was loud, along with their voices, Plaintiff was not threatening, fighting, or the like.[45]

36. Defendants had no reason to call the police.[46]

37. Before, November 14, 1998, Plaintiff had no history of headaches, but when the headaches became unbearable, he sought treatment with his family physician.[47]

38. Plaintiff suffered money damages and lost wages/ vacation time.[48]

Respectfully Submitted:

Dated: June 14, 2002

*Sandra Thompson, Esquire*
PA ID No. 84345
P.O. Box 2361
York, Pennsylvania 17405
717-845-1408

---

[42] See paragraphs 20 and 28, with accompanying exhibits.
[43] Exhibit 7, p 56, 63-64.
[44] Exhibit 7, p 29; Exhibit 9, p 29-30; Exhibit 16, p 39-40.
[45] Exhibit 9, p 32.
[46] Exhibit 7, p 52, 58-59; Exhibit 9, p 35, 37; Exhibit 16, p 37.
[47] Exhibit 1, p 78-79.
[48] Exhibit 1, p 81, 84; See Also, Plaintiff's Answer to Defendants' Second Set of Interrogatory Number 3, in describing monetary damages incurred (hereinafter referred to as Exhibit 17).