

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY L. HANES,** | : | **CIVIL NO. 1:00-CV-2003** |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **APPLE CHEVROLET, INC. and** | : | |
| **TERRY STEWART, President/Owner,** | : | |
| **Jointly and Severally,** | : | |
| | : | |
| **Defendants** | : | |



### M E M O R A N D U M

Before the court is defendants' summary judgment motion, dated June 3, 2002. The parties have briefed the issues, and the matter is ripe for disposition.

### I.    Factual Background

On November 14, 2000, plaintiff Jeffrey L. Hanes filed suit against defendants Apple Chevrolet, Inc. ("Apple") and Terry Stewart ("Stewart") seeking compensatory and punitive damages for civil rights violations. In Count II of his complaint, plaintiff alleges a violation of 42 U.S.C. § 1981. (Doc. 1). The following facts are undisputed.

In November 1998, on behalf of Metro Public Adjustment, Jesse Pohlig reserved a van for plaintiff's use through Defendants' rental car establishment. Plaintiff and several others planned to use the van to travel from York to a conference in Philadelphia. (Doc. 62, ¶ 1 & Doc. 70, ¶ 1). Mr. Pohlig provided his credit card information to defendants for payment of any rental charges. (Doc. 62, ¶ 2 & Doc. 70, ¶ 2).

On November 13, 1998, Plaintiff arrived at defendants' place of business in order to pick up the van. (Doc. 62, ¶ 3 & Doc. 70, ¶ 3). At this time, Kathy Sargen,

an employee of Apple, informed plaintiff that the van must be returned by 4:00 P.M. the following day, November 14, 1998. (Doc. 62, ¶ 4 & Doc. 70, ¶ 4). Aware of this fact, plaintiff signed the rental contract, which clearly noted a return time of 4:00 P.M., November 14, 1998. (Doc. 62, ¶ 5).

While returning to York from the seminar in Philadelphia, plaintiff realized that, due to heavy traffic, he would be unable to return the van to defendants by 4:00 P.M. At approximately 3:30 P.M., he telephoned defendants' place of business, and spoke with Joann Hall, the Apple employee working behind the rental counter at that time. (Doc. 62, ¶ 8 & Doc. 70, ¶ 8). Ms. Hall informed plaintiff that, if he failed to return the van by 4:00 P.M., he would be charged an additional day's rental fee. Plaintiff responded that if he would incur another day's rental fee, he would wait until the next day to return the van. Because another customer was waiting for this van, Ms. Hall informed plaintiff that he would only be charged for a one day rental provided he returned the van immediately. However, Ms. Hall did not have the authority to modify the written contract in this manner. (Doc. 62, ¶ 8 & Doc. 70, ¶ 9).

After several conversations between plaintiff and Ms. Hall, Mr. Hanes finally returned the van shortly after 5:13 P.M. (Doc. 62, ¶ 11& Doc. 70 ¶ 11). Shortly before Mr. Hanes' arrival, Ms. Hall spoke with her manager, who instructed her to charge plaintiff for two days' rental. (Doc. 62, ¶ 12 & Doc. 70 ¶ 13). A heated discussion ensued. (Doc. 62, ¶ 12). During this heated exchange, plaintiff asked Ms. Hall why she treated another customer in the rental area with more courtesy than she was displaying toward him. She apparently replied that she had been "waiting on

2

your black..." and stopped speaking.[1]  Plaintiff informed Ms. Hall that he knew she was about to say "black ass." (Doc. 70 ¶ 15).

Shortly thereafter, Ms. Hall requested the assistance of the manager, Matt Kugle, in resolving the dispute with plaintiff. (Doc. 62, ¶ 17 & Doc. 70 ¶ 17).  Mr. Kugle again informed plaintiff that the late return would result in a two day rental charge, but attempted to diffuse the apparent acrimony by assuring plaintiff that they could discuss the rental charges again on the following Monday. (Doc. 62, ¶ 20 & Doc. 70 ¶ 20).  However, plaintiff remained agitated. (Doc. 62, ¶ 19).  With plaintiff's concurrence, Mr. Kugle decided to summon the police for assistance.  (Doc. 62, ¶ 21 & Doc. 70, ¶ 21).

By the time the police arrived at Apple, both plaintiff and Ms. Hall had left the scene. (Doc. 62, ¶ 22 & Doc. 70 ¶ 22).  The police mailed a citation for disorderly conduct to plaintiff. (Doc. 62, ¶ 23 & Doc. 70 ¶ 23).  At the resulting hearing, plaintiff, Ms. Hall, the police officer, and one of the van's passengers testified. (Doc. 62, ¶ 25 & Doc. 70 ¶ 25).  The District Justice then found plaintiff guilty of the criminal charge of disorderly conduct as a result of his behavior at Apple on November 14, 1998. (Doc. 62, ¶ 25 & Doc. 70 ¶ 25).

Pohlig, who was responsible for payment of the van's rental fee, was only charged for one day's van rental. (Doc. 62, ¶ 28 & Doc. 70 ¶ 28).  Plaintiff was not required to pay his share of the rental fees to Mr. Pohlig. (Doc. 62, ¶ 29 & Doc. 70 ¶ 29).  Approximately one year after this incident, plaintiff sought medical treatment for headaches he had been experiencing. (Doc. 62, ¶ 30 & Doc. 70 ¶ 30).  Plaintiff alleges

---

[1]At no point in the record does Ms. Hall admit to uttering this statement (Doc. 63).  However, Mr. Lionel Weathers, a neutral witness, corroborates Mr. Hanes' allegation (Doc. 63, Ex. 17).

that these headaches are related to defendants' treatment of him on the date in question. (Doc. 1).

Plaintiff filed his complaint on November 14, 2000. (Doc. 1). On June 3, 2002, defendants filed the instant motion for summary judgment, statement of undisputed material facts, and supporting brief. (Docs. 60, 61, & 62). Plaintiff filed a brief in opposition on June 17, 2002. (Doc. 66). For the following reasons, defendants' motion for summary judgment on Count II of the complaint is granted.

## II.        Legal Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is defined as one that will affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party." Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992) (citing White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988)).

When deciding a motion for summary judgment, the court does not weigh the evidence for the truth of the matter, but simply determines "whether there is a genuine issue for trial." Schnall v. Amboy Nat. Bank, 279 F.3d 205, 209 (3d Cir. 2002) (citing Anderson, 477 U.S. at 249). An issue of material fact is "genuine" if "the

4

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint; instead, it must 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specified facts showing that there is a genuine issue for trial.'" Schiazza v. Zoning Hearing Bd., Fairview Twp., York County, Pennsylvania, 168 F. Supp.2d 361, 365 (M.D. Pa. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U. S. at 322-23.

### III.      Plaintiff's Section 1981 Claim

42 U.S.C. § 1981 forbids racial discrimination in the making or enforcement of contracts. 42 U.S.C. § 1981; Singh v. Wal-Mart Stores, Inc., 1999 WL 374184, *4 (E.D. Pa. 1999), aff'd, 225 F.3d 650 (3d Cir. 2000). When evaluating the merits of a section 1981 claim in the context of a motion for summary judgment, the court applies the burden-shifting factors first delineated by the United States Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). See Stewart v. Rutgers, The State University, 120 F.3d 426, 432 (3d Cir. 1997); Chauhan v. M. Alfieri Co., Inc., 897 F.2d 123, 126 (3d Cir. 1990).

The McDonnell Douglas burden-shifting framework can be explained as follows. First, plaintiff must prove, by a preponderance of the evidence, a prima facie

case of discrimination.  McDonnell Douglas, 411 U.S. at 802; Stewart, 120 F.3d at 432;

Singh, 1999 WL 374184 at *6.  If plaintiff successfully demonstrates a prima facie case,

the burden then shifts to defendant, who must provide the court with a legitimate,

non-discriminatory reason for their treatment of plaintiff.  Id.  The court then affords

plaintiff the opportunity to demonstrate that defendant's proffered legitimate reason

is merely pretext.  McDonnell Douglas, 411 U.S. at 804; Stewart, 120 F.3d at 433;

Singh, 1999 WL 374184 at *7.

> In order to sustain a prima facie case under 42 U.S.C. § 1981:
>
> > . . . plaintiff must show that he is a member of a protected class;
> > that he attempted to make, enforce or secure the performance of a
> > contract; that he was denied the right to do so; and, that the opportunity
> > to make, enforce or secure the performance of a contract for like goods
> > or services remained available to similarly situated persons outside the
> > protected class.

Singh, 1999 WL 374184 at *6; White v. Denny's Inc., 918 F.Supp. 1418, 1424 (D. Colo.

1996); see also Chauhan, 897 F.2d at 127.

> Plaintiff, an African-American male, is obviously a member of a

protected class, satisfying the first element of a § 1981 claim. (Doc. 62, ¶ 32 & Doc. 70,

¶ 32).  Id.  In addition, plaintiff attempted to enforce Ms. Hall's oral modification of the

rental contract, fulfilling the second element of the statute. (Doc. 62, ¶ 33 & Doc. 70 ¶

33).  Id.

> However, plaintiff has failed to demonstrate that his claim satisfies the

third element of § 1981.  This element requires the plaintiff to prove that he was

denied the right to make or enforce a contract.  Id.  Plaintiff attempts to characterize

Ms. Hall's refusal to honor her oral modification of the rental agreement as a denial of

contract performance. (Doc. 70, ¶ 33).  However, the record shows that Mr. Pohlig,

who was responsible for payment of the van rental, was only charged a one-day fee in

accordance with Ms. Hall's verbal promise to plaintiff. (Doc. 62, ¶ 28 & Doc. 70 ¶ 28). Because Apple did not refuse to perform its contract with plaintiff, he cannot satisfy the third element of a § 1981 claim. Id.

Assuming *arguendo* that plaintiff could prove that he was denied the opportunity to make or enforce a contract, his § 1981 claim would still fail because he has put forth no evidence that customers outside the protected class who belatedly returned vehicles to Apple were treated differently (Doc. 66). Id. Thus, plaintiff simply cannot satisfy the final element of his § 1981 claim.

## IV.        Conclusion

Plaintiff has failed to prove a prima facie case of racial discrimination under 42 U.S.C. § 1981. While the court does not condone either party's apparent behavior on the date in question, plaintiff's §1981 claim cannot stand, and defendants are entitled to judgment as a matter of law on Count II of plaintiff's complaint. Defendants' motion for summary judgment on Count II of the complaint is granted. An appropriate order will issue.[2]


CHRISTOPHER C. CONNER
United States District Judge


Dated: November 7, 2002

---

[2]Defendants' motion for summary judgment did not address Counts I or III of the complaint. Consequently, these counts shall be resolved at trial.